## SEYLER DEVELOPMENT CO. v. MULLEN.

No. 14280—Opinion Filed Nov. 27, 1923.

1. **Appeal and Error—Parties—Effect of Defendant in Error Being Adjudged Bankrupt.**

The fact that the plaintiff be adjudged a bankrupt and a trustee has been appointed, does not effect the right of the defendant in error to defend the cause on appeal, if the trustee in bankruptcy does not make application to be made a party to the cause.

2. **Trial—Province of Jury—Conflicting Evidence.**

The introduction of competent, conflicting testimony in the trial of a cause, or evidence from which reasonably prudent men may arrive at different conclusions, creates an issue of fact for submission to the jury.

3. **Appeal and Error—Review—Sufficiency of Evidence.**

If there is any competent testimony that reasonably tends to support the verdict of the jury, the judgment based thereon will not be reversed on appeal.

4. **Same—Verdict.**

Record examined, and held to support the verdict of the jury.

(Syllabus by Stephenson, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Carter County; B. C. Logsdon, Judge.

Action by J. S. Mullen against the Seyler Development Company, to quiet title to real estate and for damages for failure to release liens. Judgment for plaintiff. Defendant brings error. Affirmed.

Bridges & Vertrees and Clifton Williams, for plaintiff in error.

Sigler & Jackson and Moore & West, for Hal M. Cannon, trustee.

Opinion by STEPHENSON, C. Heretofore and on October 5, 1921, a contract for the sale of oil property was entered into between the plaintiff and the defendant for the sale of oil interests in the real estate therein described to the defendant for the agreed consideration of $525,000. The contract in substance provided: (1) The plaintiff should clear the property of all liens and incumbrances; (2) if the plaintiff should fail to so do, the defendant might satisfy the liens from the purchase price; (3) the defendant, should have six months from the date of the contract in which to elect to take the property; (4) if the defendant should not elect to take the property, then any sums advanced by the defendant on the payment of the purchase price, or the satisfaction of liens, should be treated as a loan from the defendant to the plaintiff, and

secured by the latter with a real estate mortgage on the property involved, and to be payable three years from date: (5) any oil runs received by the defendant from the property shall be credited on the said sums of money so advanced. The plaintiff immediately after the execution of the contract executed and delivered deed to the property pursuant to the contract to the Elbukan Oil & Gas Company and the M. T. C. Oil Company. It appears that the three oil companies named are closely associated in the oil business or may own interlocking interests. It is not quite clear under the terms of the contract why the deeds were executed and delivered so soon after the execution of the contract of sale. However, any question that might arise in this respect is avoided by a letter addressed to the plaintiff by the Seyler Development Company, signed by the president of the oil company, in answer to letter of the plaintiff bearing date as of February 2, 1922, reading in part as follows:

"We see no occasion for your letter of the 2nd inst., and fail to understand its meaning. So far as these properties are concerned we consider they have all been conveyed and any contract between yourself and the Seyler Development Co., has become one of absolute purchase."

"If there be any doubt in your mind on that point, let this letter be your notice and advice that the Seyler Development Co., considers its purchases of you to have become absolute."

The letter quoted from bears date as of February 15, 1922. The Seyler Development Company, having elected to exercise its option to purchase the property, and deeds having been executed under the contract to the oil companies named, the loan feature under the contract of sale was thereby rendered inoperative and the obligation rested on the Seyler Development Company to pay the agreed purchase price in the sum of $525,000, according to the terms of the written contract. Thereafter, and about April 1, 1922, the oil companies made default in the payment of the purchase price. The oil companies had received the oil runs from the property in question since about the date of the contract. The plaintiff, after some correspondence between the parties, went to Kansas City, and a conference was held among the interested parties. The plaintiff alleged that it was agreed among the parties the property should be deeded back to him and that he would release the Seyler Development Company from the contract of purchase provided the company would assign the judgment and liens paid and held by it on the property, and that this would settle the question of damages and value

of oil runs among the parties. The plaintiff further testified that the property was of the reasonable market value of about $250,000 at the time of the conference, and settlement in Kansas City. L. E. Francis was the owner of certain oil interests in lands covered by the sales contract and the plaintiff authorized Francis to execute written release for him with the parties involved, in accordance with the terms as above set forth. Later J. S. Mullen received a telegram from the attorney for the Seyler Development Company, requesting him to advise if L. E. Francis was authorized to sign the release. The plaintiff advised the attorney by wire that Francis was authorized by him to sign the releases. It appears that a written contract was first prepared embodying the terms as testified to by the plaintiff, and transmitted to the Seyler Development Company, by the two other oil companies. The contract was later returned to Leslie E. Francis with letters from the attorneys for the Seyler Development Company, reading in part as follows:

"We are handing you herewith by registered mail, the release contract which was forwarded to Wm. Seyler recently by you for his signature, and which had prior thereto been signed by the officers of the M. T. C. Oil & Gas Co. and the officers of the Elbukan Oil Co., and by you in your right, and by you for J. S. Mullen, W. J. Hermann and J. P. Harper.

"In accordance with our telegraphic communication, you will note that we have slightly changed the seventh paragraph so that the Seyler Development Co. may turn the Mullen liens over to the two oil companies."

The slight change as expressed in the letter was to the effect that about $90,000 in liens held by the Seyler Development Company against the property should be assigned to the two oil companies instead of J. S. Mullen. It appears that the two oil companies, who had already signed the contract and who held the title, and who had quitclaimed the same to J. S. Mullen under the compromise, understood that the liens held by the Seyler Development Company should be assigned to the plaintiff. Notwithstanding the change made in the assignment by the Seyler Development Company for the assignment of the liens to the M. T. C. Oil & Gas Company and the Elbukan Oil Company, the attorneys for these oil companies, under date of April 26, 1922, addressed a letter to the plaintiff reading in part as follows:

"In answer to yours of the 21st and 22nd instants respectively, concerning release of the Seyler Development Co. liens, would say we have had this day forwarded the

Seyler Development Co., and its attorneys Mr. Clifton Williams, of Milwaukee, an authorization on the part of M. T. C. Oil & Gas Co., and the Elbukan Oil Co., and a complete discharge of the Seyler Development Co., by both of those companies so that said Seyler Development Co., cannot longer claim they are lacking in authority to release the liens that company holds against you."

In the trial of this cause the question of the damages suffered by the plaintiff was submitted to the jury, and it returned its verdict in favor of the plaintiff and against the defendant for $200,000. Judgment went for the plaintiff quieting title in the property and against the defendant. The defendant has perfected its appeal in the cause and seeks a reversal of the judgment and verdict based on the following errors; (a) Insufficiency of the evidence to support the verdict of the jury; and (b) error of the court in refusing defendant's motion for an instructed verdict; and (c) error of the court in submitting the question of damages to the jury.

It appears from the record that J. S. Mullen has been adjudged a bankrupt by a court of competent jurisdiction, and Hal M. Cannon has been appointed as trustee. The trustee has not been made a party to this action and J. S. Mullen is the defendant in error. Whether the contract or compromise among the parties provided for the oil company to retain the liens purchased by the Seyler Development Company, or should be assigned to J. S. Mullen, under all the evidence, was a proper question of fact for submission to the jury. The verdict of the jury carried a finding in favor of the plaintiff and against the defendant on this question. It appears that the jury was justified in reaching its verdict for damages in the sum of $200,000 in favor of the plaintiff. It follows that the court did not commit error in respect to the matters complained about by the defendant. The instruction of the court fairly submitted the questions between the parties to the jury. If there is any testimony that reasonably tends to support the verdict of the jury, the judgment based thereon will not be reversed on appeal to this court. Missouri Pacific Ry. Co. v. Horn, 92 Okla. 148, 218 Pac. 689.

It is recommended that the judgment be affirmed.

By the Court: It is so ordered.